1:25-cv-534 (AJB(PJE)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAY 0 1 2025
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Albany

_____

Kristin Beaver,
Plaintiff,

    v.

Capital Region BOCES,
Defendant.

_____

VERIFIED COMPLAINT

1.    **Plaintiff, Kristin Beaver**, was employed as a nurse by **Capital Region BOCES** from **October 2017** to **April 21, 2025**. In May 2024, Plaintiff opted out of the union and shortly thereafter began reporting multiple incidents of student mistreatment and abuse by staff, including a false public accusation by a coworker. Following these actions, Plaintiff was subjected to a pattern of retaliatory behavior, including harassment, false allegations, and ultimately, wrongful termination.

2.    **Plaintiff seeks relief** for unlawful retaliation that occurred after both opting out of the union and reporting incidents of student abuse. These actions violated Plaintiff's rights under **New York Labor Law §§ 740 & 741**, the **Americans with Disabilities Act (ADA)**, and other relevant state and federal whistleblower protections. Plaintiff suffered harm, including emotional distress, reputational damage, and financial loss, as a direct result of BOCES's retaliatory actions.

Verified Complaint

1.  On or around May 1, 2024 Plaintiff opted out of the union, requesting paperwork through Katie DePierro, classroom teacher and union president. Within days plaintiff began experiencing retaliation and bullying behaviors from classroom coworkers and close friends of the union president. On May 30, 2024, Plaintiff submitted a formal report to Principal Gabriel and Administrator Caralee Kardash regarding classroom aide Linda Robillard's false public accusation that Plaintiff pushed a student during a behavior issue. Linda yelled loudly "Don't you push her she is having a seizure" In reality, no seizure was occurring and plaintiff did not push the student. No nurse was called to the room, and Linda Robillard never left her chair to assist. Plaintiff reported this incident promptly because it raised serious concerns of false allegations. Plaintiff

Plaintiff also spoke with Nicole Yamin HR director on June 4th to discuss the incident. Nicole Yamin also stated that the plaintiff should be happy because Linda had not reported it. No investigation took place and no determination letter was received for the egregious and malicious false allegations made by Linda Robillard against plaintiff.

"New York Labor Law §740 prohibits employers from retaliating against employees who disclose information regarding violations of law or regulations in the workplace. Plaintiff's report of the false allegation constitutes a protected disclosure under this law, and BOCES's retaliatory actions thereafter violate her rights under Labor Law §740. Additionally, New York Labor Law §741 provides specific protections for healthcare professionals, like Plaintiff, who report unsafe or unethical practices in the workplace. BOCES's actions in retaliating against Plaintiff for reporting workplace misconduct and unsafe conditions are also violations of §741, which prohibits retaliation against healthcare professionals for disclosing safety concerns."

2. **Shortly after opting out of union membership, Plaintiff was subjected to repeated retaliatory conduct. On or around June 2024, Plaintiff requested break coverage from Kristin Blick, RN and Kathy Stone, LPN. Both agreed to cover Plaintiff's breaks. However, soon after, Katie DePierro instructed Plaintiff that she could only take lunch at the end of the day, after her medically fragile student left for the day at 2:20 p.m.. This directive came despite Plaintiff's repeated requests for reasonable break coverage, and was part of a pattern of retaliation for Plaintiff's decision to opt out of the union and report workplace misconduct.**

The denial of reasonable break time **violates New York Labor Law §162**, which mandates that employees who work more than **six hours** in a shift must be given at least **30 minutes for a meal break**. Additionally, **New York State Human Rights Law (NYSHRL)** prohibits retaliation against employees for engaging in **protected activities** such as **reporting workplace misconduct**. Plaintiff's requests for **reasonable breaks** were a protected activity, and the retaliatory action taken by **Katie DePierro** constitutes unlawful retaliation under **Labor Law §740** and **NYSHRL**.

———

3. **Throughout the spring and summer of 2024, Plaintiff repeatedly observed and was subjected to bullying, hostile work conditions, sabotage, and escalating student mistreatment. On or about September 11, 2024, Katie DePierro, a classroom teacher who is not a medical professional, approached Plaintiff in the hallway and abruptly took Plaintiff's medically fragile 1:1 student without Plaintiff's consent. This action was a violation of the student's Individualized Education Plan (IEP) and placed the student at medical risk due to the student's seizure diagnosis. Plaintiff reported the incident as it demonstrated a clear breach of protocol and put the student in a dangerous situation, as well as a violation of Plaintiff's responsibilities under medical duty.**

"New York Labor Law §740 – Whistleblower Protection: Plaintiff's mental health day was in response to a work environment that was causing harm, and the failure to protect Plaintiff after reporting

New York Labor Law §741 – Retaliation Against Health Care Employees: As a healthcare professional, Plaintiff's mental health concerns are protected under Labor Law §741. If Plaintiff's mental health concerns are linked to a disability or disability-related stress, BOCES is required to accommodate the employee, and failing to do so may be a violation of both ADA protections and Labor Law §741 protections for healthcare professionals."

- **Americans with Disabilities Act (ADA) – Disability Discrimination**: If **Katie DePierro**'s actions led to mistreatment or unsafe conditions for the **medically fragile student**, this could be a violation of the student's rights under the **ADA**.
- **Section 504 of the Rehabilitation Act of 1973 – Failure to Accommodate**: **BOCES's failure to follow IEP guidelines** for a **medically fragile student** may violate **Section 504**, which requires accommodations for students with disabilities.
- **New York Education Law § 4402 – Failure to Follow IEP**: Violating a student's **IEP** is a breach of **New York State education law** and the **Federal Individuals with Disabilities Education Act (IDEA)**.

4. On September 4, 2024, Lisa Hatker asked Plaintiff to take responsibility for her student earlier on the days Plaintiff was not assigned to the bus route. Lisa requested that Plaintiff take the student at 7:45 a.m., so Lisa could leave earlier for the Career and Technical Education (CTE) school. Since students were not allowed in the building until 8:05 a.m., this posed a liability risk. Plaintiff refused to take on this responsibility, and immediately following her refusal, staff in the classroom began to treat her as though she had done something wrong. Only a few days later, on September 10, 2024, Plaintiff, along with the other nurses, was called into a meeting where she was informed that her hours would be reduced by half an hour daily, five days a week, despite the fact that Plaintiff was only assigned to the bus two days a week. In contrast, Lisa Hatker's hours were only reduced by half an hour total daily, but she continued to be paid by both Cobleskill and BOCES, receiving at least half an hour more than Plaintiff, who had fewer duties. When Plaintiff questioned the rationale behind this decision, Human Resources Director Nicole Yamin explained that she was reviewing all staff hours. However, such reviews are typically handled by payroll, not HR, raising concerns about the legitimacy of the review process. Moreover, Lisa Hatker, who was represented by Katie DePierro, continued to be paid by both Cobleskill and BOCES during overlapping time, further highlighting the disparity in how Plaintiff was treated. The timing of this decision—following Plaintiff's refusal to comply with Lisa's request—suggests a clear pattern of retaliation, as Plaintiff's hours were reduced in direct response to her refusal to take on additional duties that would have exposed her to liability.

5. On or about September 25, 2024, Lisa Hatker, a nurse assigned to a medically fragile student, refused to allow the student whom lost transportation to share a bus with another student, despite the fact that this would have been a reasonable accommodation. Lisa's refusal, citing a false claim that it would make her late to Maywood School, this was in fact driven by personal financial gain, as it allowed her to continue receiving overlapping compensation from both Cobleskill and BOCES. This refusal resulted in the medically fragile student being denied necessary transportation, creating significant hardship for the student's family. On or about September 25, 2024, Lisa Hatker, a nurse assigned to a medically fragile student, refused to

allow the students to share a hug with another student, despite being aware of Lisa's actions, BOCES failed to intervene or take corrective action. In contrast, when I protected medically fragile students from a  risk by ensuring proper care, BOCES retaliated against me. This disparity in treatment illustrates BOCES's failure to act in the best interest of vulnerable students and their tacit approval of Lisa's actions for financial gain. BOCES's failure to act constitutes a violation of several laws, including the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973, and Individuals with Disabilities Education Act (IDEA), which require equal access to education and accommodations

6. **On September 30, 2024, Plaintiff notified BOCES by email that she was taking a few mental health days due to escalating retaliation, fear of jeopardizing her nursing career and license, as well as student mistreatment and ongoing workplace hostility. Despite Plaintiff's clear health-related concerns, BOCES failed to address the retaliation or provide any assistance in managing Plaintiff's health issues or stressors from the hostile work environment.**

**Legal Violations/Laws:**

* **New York Labor Law §740** – 741 **Whistleblower Protection**: Plaintiff's **mental health day** was in response to a work environment that was causing harm, and the failure to protect Plaintiff after reporting misconduct constitutes retaliation under this law.
* **Americans with Disabilities Act (ADA)**: If Plaintiff's **mental health concerns** are linked to a **disability** or **disability-related stress**, **BOCES** is required to accommodate the employee, and failing to do so may be a **violation of ADA protections**.

7. **On October 4, 2024, Plaintiff met with administrators Caralee Kardash and Nicole Yamin. During the meeting, Plaintiff formally reported the mistreatment of students, hostile work environment, and retaliation after opting out of the union, as well as escalating fear for her professional license and mental health. Plaintiff also requested an accommodation or transfer from the current working environment. Plaintiff was left with the understanding that BOCES would investigate the reported incidents or provide the requested accommodation.**

**Legal Violations/Laws:**

* **New York Labor Law §740** – 741 **Whistleblower Protection**: Plaintiff's **report of misconduct** and **retaliation** are **protected disclosures**, and **BOCES**'s failure to investigate and provide protection constitutes a violation of the law.
* **Americans with Disabilities Act (ADA)**: If **Plaintiff's mental health** issues and **requests for accommodation** were due to an underlying **disability**, failing to provide reasonable accommodations would be a violation of the **ADA**.
* **New York State Human Rights Law (NYSHRL)** – **Retaliation and Discrimination**: Plaintiff's

requests for accommodation based on mental health and reports of mistreatment may fall under **retaliation** and **disability discrimination**, which is prohibited under **NYSHRL**

8. During the October 4, 2024 meeting, Plaintiff brought up the May 30, 2024 false allegation incident. Caralee Kardash immediately dismissed the complaint, stating, "Kristin, that was unfounded," despite no proper investigation having taken place. Kardash further stated that Linda Robillard admitted she made the seizure accusation but claimed it was not true. Plaintiff also disclosed the mistreatment of students, stating staff were being rough with students. Nicole Yamin, a mandated reporter under New York State law, asked no further questions on this matter, and Plaintiff had faith that a proper investigation would follow. By failing to ask follow-up questions and take action, Nicole Yamin neglected her legal obligation as a mandated reporter to investigate and report the allegations.

9. From October 2024 through January 2025, Plaintiff repeatedly requested accommodations or a transfer from her current position due to ongoing workplace harassment, hostile work conditions, and escalating retaliation. These requests were made verbally and in writing to multiple administrators, including Caralee Kardash and Nicole Yamin. Despite these repeated requests, Plaintiff was consistently denied any accommodation or transfer. This refusal further exacerbated Plaintiff's anxiety, stress, and mental health issues. It is significant to note that other staff members in similar positions were easily accommodated. Specifically, Lisa Hatker, who was assigned to care for the same medically fragile student, received an accommodation to transfer to a new role after facing disciplinary actions. Plaintiff's repeated requests for similar accommodations were ignored, which further highlights the discriminatory and retaliatory nature of the treatment she faced. This constitutes a violation of Plaintiff's rights under **New York Labor Law § 740** (whistleblower retaliation), **New York Labor Law § 741** (retaliation for healthcare professionals), **Americans with Disabilities Act (ADA)** (failure to accommodate a disability), and **New York State Human Rights Law (NYSHRL)**, which requires reasonable accommodations for employees facing health challenges.

**Legal Violations/Laws:**

- **New York Labor Law §740 – Whistleblower Protection**: Plaintiff's **reporting of the false allegations** and **mistreatment of students** constitutes protected whistleblowing under this statute. **BOCES' failure** to investigate these concerns and **retaliation** for the reports violates Plaintiff's rights under **Labor Law §740**.

- **New York State Human Rights Law (NYSHRL) – Retaliation**: The failure to **investigate the report** and the subsequent **retaliatory actions** after Plaintiff reported **misconduct** may constitute **retaliation** under the **NYSHRL**. **Discrimination** or **retaliation** for engaging in **protected activity** (reporting abuse) is prohibited.

10. **On October 10, 2024, BOCES issued a determination letter falsely concluding that all of Plaintiff's complaints were "unfounded," without conducting any formal investigation or**

witness interviews. The determination letter was issued despite Plaintiff's reports being **well-documented, and without any investigation into the alleged incidents of misconduct and mistreatment.**

____

**Legal Violations/Laws:**

> • **New York Civil Service Law §75** – **Due Process Violations**: Plaintiff's **right to a fair hearing** and proper **investigation** under **Civil Service Law §75** was violated. The failure to conduct an investigation and the issuance of a **false determination** without gathering proper evidence violates Plaintiff's **due process rights** under state law.

• **Due Process (14th Amendment to the U.S. Constitution)**: The **failure to investigate** Plaintiff's complaints and issue a **correct determination** violates her **constitutional rights** to **due process** under the **14th Amendment**.

____

11. **On October 11, 2024, Plaintiff submitted an appeal of the October 10 determination letter to Superintendent Lauren Gemmill. Plaintiff reiterated her concerns about staff misconduct, the hostile work environment, retaliation after opting out of the union, student abuse and fear of escalating false allegations that jeopardized her professional license. Despite the serious nature of these concerns, Lauren Gemmill did not respond to appeal.**

____

**Legal Violations/Laws:**

> • **New York Civil Service Law §75** – **Failure to Provide a Fair Hearing and Investigation**: **BOCES** failed to properly investigate **Plaintiff's concerns** or provide any substantive response to her **appeal**, violating her rights to **due process** under **Civil Service Law §75**.

• **New York State Human Rights Law (NYSHRL)** – **Retaliation**: The **failure to address Kristin's concerns** regarding **retaliation** and **misconduct** is part of an ongoing pattern of **retaliatory behavior** under **NYSHRL**, which prohibits retaliation for engaging in **protected activity** such as **whistleblowing** or **opting out of union membership**.

12. On November 1, 2024, Plaintiff met with Concetta Galvin, who was introduced as an independent investigator. During this meeting, Plaintiff described several incidents of student mistreatment by staff. Specifically, Plaintiff recounted incidents where students were physically mishandled, including being thrown into beanbag chairs. Plaintiff detailed how high the students were lifted and how far off the ground they were thrown. Additionally, Plaintiff noted that the students were visibly upset and crying, while staff appeared frustrated with the students during these incidents.

13. **On November 14, 2024 Plaintiff received a second determination letter from BOCES after meeting with Concetta Galvin stating that reports of student abuse were unfounded, and further investigation would follow on reports of student treatment. However, no further abuse determination followed, and plaintiff was left without any meaningful response or investigation into the serious claims of student abuse.**

**Legal Violations/Laws:**

· **New York Civil Service Law §75 – Failure to Investigate:** The **failure of BOCES** to investigate **Kristin's complaints** and provide an adequate response violates her **due process rights** under **Civil Service Law §75**, which guarantees fair procedures for **disciplinary actions** and **complaints**.

· **Due Process (14th Amendment to the U.S. Constitution):** The **failure to investigate** and **failure to provide an adequate determination** violates **Kristin's constitutional right** to **due process** under the **14th Amendment**, guaranteeing the right to **fair hearings**.

_____

14. **Plaintiffs attempts to report misconduct were met with consistent indifference by BOCES administrators. Every report made by plaintiff between May and November 2024, including reports of student mistreatment, staff retaliation, and denied accommodations, was either dismissed as "unfounded" or ignored without follow-up investigation. BOCES' actions directly violated New York Labor Law §740, which protects employees from retaliation when reporting violations of the law, including unlawful conduct such as abuse, retaliation, and failure to accommodate employees.**

_____

**Legal Violations/Laws:**

· **New York Labor Law §740 – Whistleblower Protection:** **Kristin's reporting** of **abuse**, **mistreatment**, and **retaliation** is protected under **Labor Law §740**. The **failure to investigate** these complaints and the **retaliatory actions** taken against **Kristin** violate her rights as a **whistleblower** under this law.

· **New York State Human Rights Law (NYSHRL) – Retaliation:** The **failure of BOCES** to address **plaintiffs reports** of **mistreatment**, and instead dismissing them as "unfounded" is retaliation under **NYSHRL**, which prohibits retaliation against employees for reporting misconduct or **participating in protected activity**.

15. **During the fall of 2024, plaintiffs work email account through neric.org experienced tampering and unauthorized interference. Plaintiffs Okta password was changed without her knowledge on November 26, 2024. Starting on that date, plaintiffs emails to BOCES administrators regarding absences and workplace concerns were blocked, delayed, or never**

delivered without any bounce-back notifications sent to plaintiffs . This interference with plaintiffs email communications further supports her claim of retaliation for whistleblowing and reporting misconduct, violating Labor Law §740 and §741.

_____

**Legal Violations/Laws:**

> • **New York Labor Law §740 – Whistleblower Protection**: The **unauthorized interference** with **Kristin's email communications** and the **failure to allow delivery** of **emails** related to **workplace misconduct** and **reporting violations** constitutes **retaliation** under **Labor Law §740**, which protects **whistleblowers** from retaliation for reporting **misconduct**.

> • **New York Labor Law §741 – Retaliation for Reporting Health/Safety Violations**: **plaintiffs reporting** of **abuse** and **misconduct**, followed by interference with her ability to **communicate** concerns, further violates **Labor Law §741**, which protects employees from retaliation for reporting **health and safety violations** in the workplace.

• **Wire Fraud and Computer Fraud and Abuse Act (CFAA) – Unauthorized Access: plaintiffs Okta password** being changed without her consent or knowledge and the resulting **tampering** of her work email account may also implicate violations of **the CFAA**, which prohibits unauthorized access to computer systems and tampering with communication tools.

16. **A third-party email address (181-jocelyn@rusty-load.com) appeared attached to Kristin's work email account. Kristin noticed that her emails containing keywords such as "retaliation," "union," or "student abuse" were especially likely to fail. During the Civil Service hearing, Kristin Smith (the hearing officer) testified that there were delays in Kristin's emails, further supporting the claim of interference with her communications. This deliberate interference with Kristin's communications, which were tied to whistleblowing and the reporting of misconduct, constitutes retaliation under Labor Law §740.**

_____

**Legal Violations/Laws:**

> • **New York Labor Law §740 – Whistleblower Protection**: The **unauthorized attachment of a third-party email address** to **Kristin's email account**, and the resulting **interference with her emails**, especially those containing **protected terms**, constitutes **retaliation** for her **whistleblowing** actions. **Kristin** is entitled to protection under **Labor Law §740** as her **efforts to report misconduct** were impeded by unlawful actions taken by **BOCES**.

• **Computer Fraud and Abuse Act (CFAA) – Unauthorized Access and Tampering**: The **interference with Kristin's email communications**, especially the introduction of an **unknown third-party email address**, may also implicate violations under the **CFAA**, which prohibits **unauthorized access** to **email accounts** and **tampering with communication channels.**

17. Despite being aware of these email delivery issues, BOCES falsely accused Kristin of failing to report absences during December 2–6, 2024, citing alleged unreported dates as the reason for disciplinary action. Kristin had attempted to report her absences via her authorized email method, but her emails were blocked, delayed, or never delivered, without any bounce-back notifications. BOCES did not address or resolve these email issues and instead proceeded with disciplinary action, accusing Kristin of not reporting absences despite her attempts to notify them. This situation supports her claim of retaliation for whistleblowing and reporting misconduct, as Kristin was punished for issues beyond her control.

Legal Violations/Laws:

- **New York Labor Law §740 – Whistleblower Protection**: The **failure to deliver Kristin's emails**, including those **reporting absences** and **misconduct**, constitutes **retaliation** under **Labor Law §740**. **Kristin's whistleblowing actions** were retaliated against through **unjustified disciplinary measures**.
- **Computer Fraud and Abuse Act (CFAA) – Unauthorized Access and Tampering**: The **interference** with **Kristin's emails** and **failure to deliver** communications involving **absences** is **unauthorized access** under the **CFAA**, further supporting the **retaliation claim** for **whistleblowing**.

18. **Administrator Caralee Kardash had previously sent a mass email that absences could be reported via email, yet BOCES later falsely claimed during the Civil Service hearing that plaintiff was not reporting absences properly by using her email. This misrepresentation is another attempt to discredit plaintiff and retaliate against her for her reports of student mistreatment and other misconduct, which is in violation of Labor Law §740.**

Legal Violations/Laws:

- **New York Labor Law §740 – Whistleblower Protection**: **Kristin's retaliation** claim stems from **BOCES's false misrepresentation** of her **absences** reporting and **efforts to discredit** her **whistleblowing** about **student mistreatment** and **other misconduct**.

19. **In December 2024, BOCES escalated disciplinary action against plaintiff by serving Civil Service §75 charges. These charges falsely accused plaintiff of misconduct, including failure to report absences, insubordination and incompetence, despite the known email issues and hostile work environment plaintiff faced. This escalation of disciplinary action is directly**

connected to BOCES's retaliatory actions for plaintiffs whistleblowing activities, violating her rights under Labor Law §740 and Labor Law §741.

Case 1:25-cv-00534-AMB-PJE   Document 1   Filed 05/01/25   Page 10 of 30

**Laws Violated:**

- **New York Labor Law §740 – Whistleblower Protection**: This claim is rooted in retaliation for **plaintiffs whistleblowing** about **student mistreatment** and **workplace misconduct**, which was protected activity under this law.

- **New York Labor Law §741 – Retaliation Against Nurses**: plaintiffs reports of **misconduct** and **mistreatment** fall under whistleblower protections for healthcare professionals, violating **Labor Law §741**.

20. BOCES consistently minimized and dismissed every example of mistreatment that Plaintiff reported, including serious incidents. For instance, during the refrigerator incident, Plaintiff lightly moved a student forward while the student was having a temper tantrum. Staff member Linda Robillard then yelled across the room, "Don't push her, she's having a seizure." However, the student was not having a seizure, and Linda's public accusation was a false report. BOCES took no action to investigate this false allegation, instead targeting Plaintiff.

This conduct constitutes retaliation under Labor Law §740, as Plaintiff was subjected to harmful and retaliatory treatment after she made disclosures about workplace safety and misconduct.

21. BOCES's lack of investigation into Plaintiff's complaints—despite clear documentation of abuse and unsafe conditions—violates Labor Law §740, which guarantees employees protection when they report workplace misconduct. BOCES's failure to act was retaliatory, and Plaintiff's due process rights were violated under Civil Service Law §75 and the 14th Amendment, which guarantee employees a fair process before disciplinary action is taken.

22. In response to Plaintiff's escalating complaints, BOCES falsely accused Plaintiff of misconduct, creating a false narrative that the Plaintiff had been insubordinate or negligent. This was a direct attempt to discredit Plaintiff and prevent her from pursuing further claims. The retaliatory actions by BOCES are unlawful under Labor Law §740 and §741, as Plaintiff was penalized for making legitimate disclosures of misconduct.

23. Despite Plaintiff's repeated efforts to seek assistance and accountability from BOCES administrators, including Caralee Kardash and Nicole Yamin, Plaintiff's concerns were ignored,

and retaliatory actions were taken against her. These actions, which include denied accommodations and reduced hours, are clear violations of Labor Law §740 and §741, as well as due process rights guaranteed under Civil Service Law §75 and the 14th Amendment.

24. The pattern of retaliation, false accusations, and unfair treatment continued despite Plaintiff's consistent reporting of mistreatment. The failure of BOCES to investigate Plaintiff's complaints about student abuse and staff misconduct demonstrates that Plaintiff's rights were repeatedly violated, including rights under Labor Law §740, §741, and the 14th Amendment.

25. The continued failure to act on Plaintiff's reports of mistreatment and misconduct by staff, as well as the escalation of retaliatory actions after Plaintiff reported the transportation issue, demonstrates a pattern of retaliation. This behavior violates Labor Law §740, which prohibits retaliation for employees who disclose workplace violations, and §741, which further protects healthcare employees who report safety concerns or patient abuse.

26. On November 14, 2024, Plaintiff received a second determination letter from BOCES. This letter falsely concluded that there was no hostile work environment and that Plaintiff's prior complaints were unfounded. The letter also misleadingly implied that Attorney Kevin Hickey's investigation had been incorporated into the determination, despite the fact that Hickey had not even begun investigating at the time. This lack of an independent investigation further demonstrates retaliatory conduct and the denial of due process.

Plaintiff asserts that BOCES's failure to investigate these reports and its reliance on misleading determinations violated her due process rights under Civil Service Law §75 and the 14th Amendment. BOCES's actions reflect an ongoing pattern of retaliation aimed at silencing Plaintiff and preventing her from exercising her legal rights.

27. BOCES's determination that Plaintiff's complaints were unfounded, despite the lack of investigation, further supports the retaliatory nature of Plaintiff's termination. The failure to address Plaintiff's complaints and their decision to serve Civil Service §75 charges based on insufficient evidence is another violation of Labor Law §740, as well as Plaintiff's rights under Civil Service Law §75.

28. On January 3, 2025, Nicole Yamin, the Human Resources Director at BOCES, called Plaintiff and asked, "Kristin, can I ask you a question? Did you ever plan on returning to your assignment?" Plaintiff felt this question was a trick and attempted to manipulate her response. In the course of the conversation, Plaintiff expressed her desire to return to her position but made it clear that

resign, she would have to attend a Civil Service §75 hearing, which Plaintiff later learned would be used to terminate her. When Plaintiff asked for clarification on what the hearing was, Yamin confirmed that it was to terminate her employment. Plaintiff felt that Nicole Yamin was trying to coerce her into saying something that could be used against her. After the call, Plaintiff immediately emailed Nicole Yamin, requesting that all further communication be done exclusively through email and that she should not contact Plaintiff by phone. Subsequently, BOCES included in Plaintiff's Civil Service §75 charges that Plaintiff had refused to return to work unless staff were moved out. This mischaracterization of Plaintiff's actions is false and part of BOCES's retaliatory efforts against Plaintiff for raising concerns about abuse and a hostile work environment.

29. In addition to the procedural violations, BOCES's reliance on hearsay evidence, handwritten notes, and manipulated documentation in the Civil Service hearing underscores the unfairness and illegitimacy of the proceedings. Plaintiff was denied a fair and impartial hearing process, which is a violation of Civil Service Law §75 and the 14th Amendment. This failure to adhere to proper investigatory procedures and reliance on unsubstantiated evidence is a direct violation of Plaintiff's rights.

30. Plaintiff was denied a meaningful opportunity to prepare her defense for the Civil Service hearing because BOCES failed to provide her access to the disciplinary file, supporting witness statements, investigation reports, or other materials relied upon to bring charges against her. This failure deprived Plaintiff of her rights under Civil Service Law §75 and the Due Process Clause of the New York State Constitution. As a result, Plaintiff was forced to defend herself without access to critical evidence, rendering the disciplinary hearing fundamentally unfair and retaliatory.

31. So At the Plaintiff's Civil Service § 75 hearing, BOCES permitted Katie DePierro—Plaintiff's classroom teacher and union president—to testify against Plaintiff despite the fact that DePierro was not an administrator and was not a direct witness to the disciplinary charges. Plaintiff had previously opted out of union membership, a constitutionally protected right, and DePierro admitted during the hearing that she "felt bad" and found it "unfortunate" that Plaintiff had exercised that right. During the proceedings, BOCES also submitted as evidence a text message that Plaintiff had sent to a coworker, Lisa Hatker. However, rather than keeping Plaintiff's private text confidential, Lisa immediately forwarded the message to DePierro—demonstrating that DePierro and Hatker were communicating about Plaintiff behind the scenes prior to the hearing. There was no legitimate reason for a coworker to forward Plaintiff's private message to the union president unless DePierro was actively involved in discussions about Plaintiff's disciplinary case before the hearing even occurred. Additionally, prior to the hearing, DePierro had physically intervened in Plaintiff's assigned duties by grabbing Plaintiff's medically fragile 1:1 student— a student with a known seizure disorder—away from Plaintiff's care without medical authority, creating a serious safety risk. BOCES took no action to investigate or discipline DePierro for this inappropriate and dangerous conduct. Instead, BOCES rewarded DePierro by relying on her

testimony to discredit Plaintiff during the hearing. These actions demonstrate improper bias, collusion, retaliation for protected activities, and reckless disregard for both employee rights and student safety. As a result, the disciplinary hearing was fundamentally tainted, and Plaintiff's due process rights were violate

Katie DePierro's False Testimony Regarding Linda Robillard's Actions:

32. During the Civil Service §75 hearing, Katie  DePierro testified under oath that Linda  Robillard jumped from her chair to assist a student during the alleged seizure incident on May 30, 2024. This testimony was false, as Linda Robillard never left her chair, and no seizure occurred. In reality, the student was not having a seizure, and Plaintiff did not push the student, as falsely alleged by Linda. Katie DePierro's false testimony during the hearing was part of the ongoing campaign to discredit Plaintiff and retaliate against her for reporting the abuse and mistreatment of students.

33. At the Civil Service § 75 hearing, BOCES administrator Nicole Yamin admitted under oath that she failed to report Plaintiff's allegations of student abuse to New York State authorities, despite her clear legal obligation as a mandated reporter. When questioned by the Hearing Officer, Kristen Smith, Yamin acknowledged that failure to report abuse carries "serious consequences." Yamin's admission establishes that BOCES knowingly disregarded serious reports of student mistreatment, placing both vulnerable students and Plaintiff at risk. Furthermore, Yamin falsely testified that she and Caralee Kardash met with Plaintiff on June 19, 2024, to follow up regarding Plaintiff's May 30, 2024 report of false allegations by Linda Robillard. In truth, no substantive meeting occurred on June 19; the actual discussion regarding Plaintiff's May 30 report took place approximately two weeks earlier, on or around June 4, 2024, and Kardash was not present. Plaintiff believes that Yamin later relied on a June 19 phone call log in an effort to reconstruct events inaccurately. By misstating critical dates, minimizing the seriousness of Plaintiff's concerns, and failing to fulfill her mandated reporting duties, Yamin demonstrated deliberate indifference, undermined the integrity of the investigation process, and materially contributed to the retaliatory actions taken.

34. Prior to the Civil Service § 75 hearing, Defendants failed to provide Plaintiff with critical evidence, witness lists, or documentation intended to be used against her at the hearing. Plaintiff, who was self-represented and not assisted by legal counsel, was never afforded an opportunity to review the allegations, prepare a defense, or meaningfully respond to the evidence presented. Defendants' failure to provide advance disclosure of evidence violated Plaintiff's rights under New York Civil Service Law § 75, which mandates that charges be served upon the employee with sufficient detail to permit an adequate defense, and further deprived Plaintiff of procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution. Defendants' actions prejudiced Plaintiff's ability to defend herself, fundamentally tainted the fairness of the hearing, and contributed to the retaliatory and biased outcome engineered against her. Defendants' deliberate withholding of evidence demonstrates bad faith, reckless disregard for Plaintiff's constitutional rights, and an intent to obstruct Plaintiff's ability to challenge her termination effectively.

35.  Officer Matthew Stott, who served as the School Resource Officer (SRO) assigned to Capital
     Region BOCES but employed by the Colonie Police Department, conducted a biased and
     inadequate investigation into Plaintiff's reports of student mistreatment. Despite being informed
     of serious allegations, including hair pulling, open-hand slapping, and rough handling of special
     education students, Officer Stott completed his investigation in a single day and prematurely
     deemed Plaintiff's allegations "unfounded." During his testimony at Plaintiff's Civil Service § 75
     hearing, Stott admitted that he was informed of these specific allegations. However, in his final
     police report submitted to authorities, Stott failed to document these critical details, falsely
     describing both students as "nonverbal" despite their ability to communicate, and vaguely
     concluded without factual explanation that the allegations were unfounded. During his testimony,
     Stott focused extensively on describing how upset accused staff members Linda Robillard and
     Rena DiRuzio appeared during interviews, rather than emphasizing the seriousness of the
     student mistreatment allegations. The police report and testimony reflected a greater concern
     for the emotional impact on staff than the potential harm suffered by vulnerable students. Officer
     Stott also failed to interview critical witnesses with firsthand knowledge of the incidents. His
     investigation was not conducted independently, as it was closely coordinated with BOCES
     administrators who sought to protect implicated staff. Defendants relied heavily on Officer
     Stott's flawed and incomplete report during Plaintiff's disciplinary proceedings, compounding the
     denial of due process and further demonstrating the retaliatory animus against Plaintiff for
     engaging in protected whistleblower activity. At Plaintiff's Civil Service § 75 hearing, counsel for
     Defendants, Bethany Centrone, exhibited extreme bias and bad faith by minimizing and
     dismissing Plaintiff's concerns about the investigation and the mishandling of the student
     mistreatment allegations.

36.  At Plaintiff's Civil Service § 75 hearing, counsel for Defendants, Bethany Centrone, exhibited
     extreme bias and bad faith by minimizing and disparaging Plaintiff's documented mental health
     condition. Centrone improperly characterized Plaintiff's anxiety and whistleblower complaints as
     exaggerated and opportunistic, despite knowing that Plaintiff was actively receiving medical
     counseling and treatment during the relevant period. Rather than addressing the serious
     allegations of student mistreatment raised by Plaintiff, Centrone weaponized Plaintiff's protected
     medical condition to undermine her credibility in a public disciplinary proceeding. Centrone's
     conduct demonstrated reckless disregard for Plaintiff's rights under the Americans with
     Disabilities Act (ADA), Section 504 of the Rehabilitation Act, the New York State Human Rights
     Law, and New York Labor Law § 741. Centrone's remarks were not isolated, but part of a broader
     pattern of retaliatory animus employed by Defendants to punish Plaintiff for reporting safety
     concerns, seeking accommodations, and engaging in protected whistleblower activity.
     Defendants' use of Plaintiff's mental health against her in official proceedings constitutes
     discrimination, retaliation, and a fundamental violation of Plaintiff's constitutional and statutory
     rights.

37.  Plaintiff further alleges that BOCES's internal investigation, purportedly conducted by Kevin
     Hickey, was materially deficient and violated due process standards. Mr. Hickey was assigned to
     conduct an investigation in the fall of 2024; however, Plaintiff never received a copy of his
     investigative report prior to or during her Civil Service § 75 hearing. Upon review of the hearing
     record, it is evident that Mr. Hickey's investigation was not conducted until the week of
     November 20, 2024, yet BOCES issued a final determination letter—finding Plaintiff's complaints
     unfounded—on or around November 14, 2024. This chronology proves that BOCES issued its

decision before Hickey's investigation had even begun. Additionally, the so-called investigation

Case 1:25-cv-00534-AJB-DJE    Document 1    Filed 05/01/25    Page 15 of 30

report itself was undated, further casting doubt on its legitimacy and evidentiary value. Hearing Officer Kristen Smith raised concerns on the record regarding whether Hickey's findings were ever formally disclosed to Plaintiff, and whether they could have influenced the outcome of the determination letter. Plaintiff asserts that the failure to disclose the investigation violated her constitutional due process rights under the Fourteenth Amendment, New York Civil Service Law § 75, and fundamental principles of fair administrative procedure. Plaintiff was denied the opportunity to review and meaningfully challenge the investigation purportedly used to justify her discipline and termination. Plaintiff further alleges that the timing and structure of Mr. Hickey's involvement appears intentionally calculated to manufacture a post-hoc rationalization for BOCES's predetermined retaliatory actions. By issuing a determination before Hickey's investigation even commenced, BOCES demonstrated bad faith and a blatant disregard for the necessity of a neutral and timely inquiry into Plaintiff's serious allegations of workplace retaliation, whistleblower suppression, and student mistreatment.

Spoliation, Fabrication, and Withholding of    Critical Evidence

38. Moreover, the investigation report produced by Kevin Hickey lacked a date, undermining its authenticity and raising serious questions about whether it was drafted after the fact to bolster BOCES's already-issued determination. The absence of a date, combined with the Defendants' misrepresentation during the hearing that Hickey's investigation informed the November 14 determination, supports an inference of spoliation, fabrication, or intentional withholding of critical evidence. Defendants' failure to preserve, disclose, or accurately date investigative materials constitutes a violation of Plaintiff's due process rights and further evidences the retaliatory and bad faith motives driving the disciplinary proceedings. Plaintiff reserves the right to seek appropriate remedies for spoliation, including adverse inferences, discovery sanctions, and evidentiary exclusions, as permitted under.

39. During the Civil Service § 75 hearing, Caralee Kardash, Director of Special Education at Capital Region BOCES, provided materially false and misleading testimony regarding Plaintiff's protected complaints of workplace misconduct. Kardash testified that she and Nicole Yamin spoke with Plaintiff in "mid-June" of 2024 regarding Plaintiff's May 30 report of serious staff misconduct, including a false public accusation involving a medically fragile student. In reality, the substantive follow-up conversation regarding the May 30 incident occurred on or around June 4, 2024, not mid-June. Based on Plaintiff's recollection and available evidence, it does not appear that Kardash was present for this conversation. Kardash further testified that she and Yamin dismissed Plaintiff's serious allegations as "unfounded" based solely on Linda Robillard's denial that her false public accusation occurred. They did not conduct any independent investigation, did not interview any additional witnesses, did not collect or review any physical evidence from the classroom, and did not meaningfully question the events described by Plaintiff. Rather than treating Plaintiff's concerns with the seriousness required under the law, Kardash and Yamin reflexively accepted Robillard's explanation and closed the matter without further inquiry, demonstrating reckless disregard for truth, safety, and Plaintiff's protected rights. In addition, Kardash minimized Plaintiff's good-faith requests for workplace accommodations, portraying them as insincere or procedurally deficient despite clear evidence that Plaintiff actively sought assistance and removal from a hostile work environment. Kardash's testimony and retaliatory conduct form part of a broader pattern of administrative bad faith designed to suppress

40.  Plaintiff asserts that BOCES engaged in hypocritical and retaliatory conduct by granting Nurse
Lisa an accommodation to work at the Career and Technical Education (CTE) site, while she
continued to be funded by BOCES through special education funds. Lisa's dual compensation,
where she was paid by both BOCES and Cobleskill, constitutes a clear case of double-dipping
and misuse of public funds. Despite these improper payments, Plaintiff—who raised concerns
about such misconduct—was falsely accused of misconduct by BOCES, further demonstrating
their retaliatory actions.

41.  BOCES's failure to address Lisa's double-dipping, while simultaneously accusing Plaintiff of
wrongdoing, illustrates their blatant hypocrisy. BOCES allowed a staff member to improperly
benefit from special education funds, yet when Plaintiff raised legitimate concerns, BOCES
retaliated by falsely accusing her of misconduct. This conduct highlights the institution's
disregard for ethical practices and demonstrates the retaliatory nature of the disciplinary actions
taken against Plaintiff for exposing wrongdoing.

42.  In further evidence of Defendants' ongoing retaliation, Plaintiff alleges that confidential
communications related to serious workplace concerns were improperly shared among BOCES
staff in an effort to undermine and discredit her. Specifically, Plaintiff sent a professional and
good-faith text message to Lisa Hatker seeking support regarding concerns of student abuse
and a hostile work environment. Rather than responding appropriately, Hatker improperly
disseminated Plaintiff's confidential communication through a mass text message, including
forwarding it directly to classroom teacher and union president Katie DePierro. DePierro was
neither an administrator nor an appropriate party to receive hearing-related or workplace
complaint communications and had previously demonstrated hostility toward Plaintiff. This
unauthorized dissemination of Plaintiff's protected communication supports an inference that
BOCES staff were improperly coordinating against Plaintiff outside official reporting channels, in
violation of Plaintiff's rights under New York Labor Law § 741, the Americans with Disabilities Act
(ADA), and the First Amendment protections against retaliation for raising matters of public
concern. This incident further illustrates the pervasive retaliatory culture fostered by Defendants
against employees who engage in protected whistleblower activity.

43.  At Plaintiff's Civil Service § 75 hearing, Concetta Galvin's testimony was incomplete and
misleading. During her interview with Plaintiff, Plaintiff provided detailed accounts of multiple
serious incidents of student mistreatment, including instances where a frustrated staff member
picked up students and threw them into a beanbag chair. Plaintiff specifically explained how high
the students were lifted and the distance they were thrown. Additionally, Concetta Galvin directly
asked Plaintiff how the students reacted to being thrown into the beanbag chairs. Plaintiff clearly
stated that the students were crying and visibly upset, but Concetta intentionally omitted this
critical information from her notes and report. This omission downplays the severity of the
mistreatment and misrepresents the true nature of the incidents. Furthermore, during the
hearing, Kristen Smith, the hearing officer, pointed out that Concetta had altered or "corrected"

her notes after the interview, including making changes to portions of his raises serious concerns about the integrity of her testimony and suggests that she selectively edited the details to fit a predetermined narrative. The failure to accurately document the full details of these incidents, including the students' reactions, along with the manipulation of the notes, undermines the credibility of Concetta Galvin's testimony and further demonstrates the biased nature of the investigation.

44. BOCES's refusal to grant Plaintiff's transfer request, citing the medical need specified in the student's IEP, is inconsistent and discriminatory. While Plaintiff's request for transfer was denied based on the student's medical need, BOCES allowed another nurse to care for a medically fragile student, yet this nurse's hours were limited to 1:30 p.m., despite the school day ending at 2:10 p.m. This left the student without necessary care for the final 40 minutes of the day. This clear double standard shows that BOCES selectively applied the same policy, denying Plaintiff's request under the guise of the IEP's medical need, while simultaneously failing to provide adequate care for a student in a similar situation. This inconsistency in how BOCES handled the accommodation request highlights their retaliatory and discriminatory actions, revealing that Plaintiff's transfer was denied not for legitimate reasons, but as part of a broader pattern of retaliation for Plaintiff's whistleblowing and protected activities.

FURTHER ALLEGATIONS AND CONTEXT:

1. Conflict of Interest and Bias Due to Ongoing Legal Proceedings:

"In addition to the serious allegations outlined above, Plaintiff hereby brings to the Court's attention a highly relevant and material fact: Caralee Kardash, Director of Special Education at BOCES, is married to the current Superintendent of the Rensselaer School District. As of today, the Rensselaer School District is being sued in connection with allegations of abuse involving an autistic student. This lawsuit, which has gained public attention and media coverage, casts a shadow on the integrity of the actions taken by BOCES administrators, particularly in their response to Plaintiff's reports of misconduct. The public nature of this lawsuit, coupled with the professional responsibilities and public stature of Caralee Kardash's husband, creates an undeniable conflict of interest and a strong appearance of bias in how BOCES administrators handled Plaintiff's complaints."

"The timing of the Rensselaer School District lawsuit, which is focused on serious allegations of student mistreatment, coincides with Plaintiff's repeated complaints about abuse, retaliation, and unsafe conditions at BOCES. Plaintiff believes that this external legal controversy, which has been widely reported, may have influenced the impartiality of BOCES administrators. Caralee Kardash's position at BOCES as the Director of Special Education, coupled with her husband's leadership role in the Rensselaer School District, creates a clear potential for conflict in how BOCES responded to Plaintiff's reports of student abuse, workplace harassment, and retaliatory conduct. This conflict of interest should be viewed in the broader context of the retaliatory and discriminatory actions Plaintiff faced, which escalated after she began reporting misconduct and raising concerns about the safety of vulnerable students under BOCES's care."

2. Appearance of Retaliation and Misuse of Authority:

"Given the ongoing legal issues faced by Caralee Kardash's husband, and the fact that this lawsuit involves allegations of abuse similar to those reported by Plaintiff at BOCES, there is a heightened concern that the actions taken by BOCES administrators, including Caralee Kardash, may have been influenced by a desire to deflect attention from the broader issues of misconduct. Plaintiff believes that this conflict of interest led to a pattern of retaliation aimed at silencing her concerns and protecting BOCES from public scrutiny, rather than conducting a fair and thorough investigation into her complaints."

"This conflict of interest not only compromises the integrity of BOCES's response to Plaintiff's complaints but also highlights the need for an independent investigation into the retaliatory conduct Plaintiff experienced. The failure of BOCES to act impartially and the mishandling of Plaintiff's reports of abuse and mistreatment further demonstrate the systemic failure within BOCES to protect employees and students from harm. Plaintiff asserts that this failure to properly investigate and address complaints constitutes a violation of her rights under New York Labor Law §740, §741, and the Americans with Disabilities Act (ADA), among other applicable laws.

WHEREFORE, Plaintiff respectfully requests that this Court:

    1. Award Plaintiff damages for the harm caused by the retaliation, wrongful termination, and other unlawful actions taken by BOCES as described herein, including but not limited to:

- Back pay and front pay,
- Compensatory damages for emotional distress,
- Punitive damages due to the malicious and willful nature of Defendant's actions,
- Any and all other relief the Court deems just and appropriate, as the jury sees fit.

    2. Award Plaintiff her attorney's fees, costs of this action, and any additional expenses incurred due to BOCES's unlawful conduct, including costs of discovery, filing, and court fees.

    3. Grant such other relief as the Court deems just and proper, as the jury deems appropriate.

VERIFICATION:

I, Kristin Beaver, declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: 4/30/25

Signature: _____

Kristin Beaver, Plaintiff

Linda Singh
Notary Public, State of New York
Qualified in Schenectady County
No. 01SI0004066
Commission Expires March 27, 2027

Exhibit A: First Determination Letter from BOCES
Exhibit B: Second Determination Letter from BOCES
Exhibit C: Text Message from Witness (Brianna) Confirming Abuse Incident, Dated February 19, 2025
Exhibit D: Text Message from Lisa Hatker Forwarding Plaintiff's Private Message to Katie DePierro (Evidence of Collusion)
Exhibit E: Nurse's Note Confirming No Seizure Occurred (Related to May 30, 2024, Incident)
Exhibit F: Evidence of Unauthorized Third-Party Access to Plaintiff's Emails (Both Personal and BOCES Accounts)
Exhibit G: Plaintiff's Civil Service §75 Disciplinary Charges
Exhibit H: Plaintiff's Letter to Lauren Gemmill Reporting Incidents of Bullying, Harassment, and Child Abuse



CENTRAL ADMINISTRATION
Nicole Yamin
Director of Human Resources
nicole.yamin@boces.org
518-862-4910
Fax: 518-862-4949

October 15, 2024

VIA ELECTRONIC MAIL

Kristin Beaver
Kristin.beaver@boces.org

Re: Complaint via email on September 30, 2024.

Dear Kristin,

On October 4, 2024, you had a conversation with me and the Director of Special Education, Caralee Kardash regarding your claim that you were subjected to workplace harassment and/or hostile work environment by your co-workers beginning in May of this year.

You claimed that the negative treatment by your coworkers resulted solely from your withdrawal from the union, but did not allege any specific violations of BOCES Board Policy. You recited recent incidents of personality conflicts with two of your coworkers, which did not rise to the level of a hostile work environment. You offered no evidence that the treatment you experienced with these individuals was any different than what your colleagues who are members of the union experience with those same individuals. You also did not allege any specific acts by the union or its representatives that supported a claim that these workplace interactions were caused by or connected to the union.

Therefore, there is insufficient evidence to establish that the negative interactions with your coworkers were related to your request to withdraw from the union. Absent any further information, we will be closing this matter. If there is additional information that you would like to report, please let me know.

While no violations of BOCES policy were alleged or supported, we recognize the importance of maintaining a harmonious and productive work environment. To this end, we recommend that you work with your supervisor and discuss ways to improve workplace communication and to help prevent future conflicts.

If you have any questions or need further assistance, please feel free to contact me.

Sincerely,

Nicole Yamin
Director Human Resources

ALBANY | SCHOHARIE | SCHENECTADY  SARATOGA   Board of Cooperative Educational Services
900 Watervliet-Shaker Road, Albany, NY 12205 · www.capitalregionboces.org

AA           outlook.office.com           ↻





**CENTRAL ADMINISTRATION**
Nicole Yamin
Director of Human Resources

518-862-4910
Fax: 518-862-4929

November 14, 2024

**VIA ELECTRONIC MAIL**
Kristin Beaver
@kristin.beaver@neric.org

RE:  Complaint via email on September 30, 2024

Dear Kristin:

It is our understanding that Concetta Galvan interviewed you on November 1, 2024, and gave you an opportunity to supplement your prior hostile work environment claim.

Based on the information received from Ms. Galvan, it has been concluded that the allegations against your co-workers that form the basis for your complaint do not rise to the level of a violation of BOCES policy or law. More specifically, while you recite various incidents of what are arguably unpleasant interactions with your colleagues, you have not connected those situations to any alleged membership in a protected class or made any allegation that such situations resulted from any protected activity. We would therefore reiterate our position as set forth in our prior email with letter attached on October 15, 2024.

While there were no violations of BOCES policy or law, we recognize the importance of maintaining a harmonious and productive work environment. To this end your supervisor will be reaching out to you to communicate the ways in which we will be promoting a positive work culture.

As to your additional claim of alleged mistreatment of a student in the classroom, please be advised that we are in the process of separately investigating this matter.

Sincerely,

Nicole Yamin
Director of Human Resources

cc:  Lauren Gemmill, District Superintendent
Elizabeth Wood, Deputy District Superintendent & COO
Karen Swain, Assistant District Superintendent
Coralee Kardash, Director-Special Education
Bethany Centrone, Esq., School Attorney

ALBANY  SCHOHARIE  SCHENECTADY  SARATOGA  **Board of Cooperative Educational Services**
900 Watervliet Shaker Road, Albany, NY 12205  www.neric.org

4:29                                    .ıl LTE ☐

C.

**New iMessage**                        Cancel

To: 

> The division of Human Resources will not release names If you are nervous look it up I swear they don't tell the employer names

> Do you remember when we seen Linda slap Logan's hands and pulled his hair

Yes

> Thank you Don't be nervous

Wed, Feb 19 at 1:10 PM

> by chance if anyone asks you do not tell anyone you have talked to me

Okay

Sun, Feb 23 at 7:28 PM

> One more question Did Officer Stott ever ask you any questions or anyone else in regards to the classroom

He did not speak to me the only person I know about is Megan.

Fri, Feb 28 at 7:31 AM

+                                       🎤





MMS 1:10 PM

Lisa Hatker

I also need to add... I am
not being bullied or abused
by anyone in  BOCES ... if
fact I have felt supported by
BOCES staff ( faculty and
administrators)

MMS
1:14 PM

Katie DiPierro

Thank you Lisa !!    MMS
1:22 PM



# Medical History Report

## Maywood, CRB

| Name | Visit Type | Time In | Time Out | Medication/Reason | Dosage |
|------|-----------|---------|----------|-------------------|--------|
| | Walk-In | 11/21/23 10:20 am | 11/21/23 10:34 am | | |

**Notes:** Student to health office for rash. Red ringed lesion on right cheek, suspect ringworm. Student sent home with mother.

| | Walk-In | 12/12/23 12:00 pm | 12/12/23 12:09 pm | | |

**Notes:** Nurse to classroom after teacher reports student had 27 second absence seizure. Student sitting up in bean bag chair, talking and smiling. Call out to mom, Rebeca, updated on student seizure and current status.

| | Walk-In | 12/14/23 12:45 pm | 12/14/23 1:45 pm | | |

**Notes:** Camila in health office, getting lunchtime tube feeding. Began to have cluster seizures at 12:50. Had approximately 40, second long, brief focal seizures over the course of the next hour. Student clenching teeth during seizures and bit down o inner right cheek and lip. Unable to get O2 sat. Pulse 85. Mom to school to pick up Camila and transport to MD's office.

| | Walk-In | 1/8/24 9:58 am | 1/8/24 9:58 am | | |

**Notes:** Camila's mic-key site noted to be irritated with crusty pale drainage. Call out to mom. Mom aware, was treating over the weekend with milk of mag and topical antibiotic, waiting on call back from MD. Placed gauze around mic-key.

| | Walk-In | 1/18/24 9:55 am | 1/18/24 11:00 am | | |

**Notes:** Student had brief, 5 second seizure at 0955 and second brief, less than 5 second seizure at 1026. Call out to mom, upda on seizure activity, touched base on new seizure care plan. Mother chose to pick Camila up early. Camila sent home wi father.

| | Walk-In | 2/6/24 10:14 am | 2/6/24 11:45 am | | |

**Notes:** Nurse to classroom. Staff reports Camila had 2, less than five second seizures. Teacher communicated to mom, mom t school to pick student up.

| | Walk-In | 2/29/24 11:55 am | 2/29/24 12:41 pm | Valtoco 10mg | |

**Notes:** Nurse called to classroom by staff. Camila having cluster seizures. First seizure observed by classroom staff at 11:55a second at 11:58, third at 12:01. Administered 10mg Valtoco intranasal to right nare per MD order. Call out to mom, m aware and enroute to school. Call to 911. Camila continuing to cluster, having seizures every 1-3 minutes. Pulse 97, O 98%, unable to obtain blood pressure. Camila oriented, upset between seizures. EMS staff arrived, given report. Mom arrived, Camila transferred to hospital via ambulance accompanied by mom and classroom aide.

| | Walk-In | 3/28/24 11:38 am | 3/28/24 12:30 pm | Valtoco 10mg | |

**Notes:** Nurse called to classroom by staff in response to Camila having a 15 second focal seizure and losing control of her bla at 11:38. Call to mom to update, mom states dad enroute but agrees with plan to follow seizure action protocol. Secon seizure at 1143, third noted at 1155. Valtoco 10mg nasal spray administered via right nare per MD order at 1157. 911 Camila continued to cluster, but seizures becoming further apart and shorter in duration. Vital signs stable. EMS arr updated and monitoring. Camila's father arrived at 1220. Father elected not to transport Camila to hospital via ambula Camila sent home with father.

| | Walk-In | 6/24/24 2:00 pm | 6/24/24 2:08 pm | | |

**Notes:** Nurse to classroom to assess 3 itchy marks on Camila's left upper thigh. Appear to be bug bites. Staff will notify pare

F.



F.



181jocelyne@rustyload.com                  Cancel

**All**    Mail    People    Files    Events

**1**  Filter

**P**  **To: 181jocelyne@rustyload.com**        11/19/24
Undeliverable: FW: Mental health days    11   Inbox
...failed to these recipients or groups:
181jocelyne@rustyload.com A problem oc...

**P**  **To: 181jocelyne@rustyload.com**        11/19/24
Undeliverable: FW: letters of resignation   5   Inbox
...failed to these recipients or groups:
181jocelyne@rustyload.com A problem oc...

**P**  **To: 181jocelyne@rustyload.com**        11/19/24
Undeliverable: FW: Out sick            7   Inbox
...failed to these recipients or groups:
181jocelyne@rustyload.com A problem oc...

**P**  **[Draft] To: 181jocelyne@rustyload.c...**   11/19/24
Undeliverable: FW: Out sick            6   Inbox
...failed to these recipients or groups:
181jocelyne@rustyload.com A problem oc...

**P**  **To: 181jocelyne@rustyload.com**        11/15/24
Undeliverable: FW: Response Letter      7   Inbox
...failed to these recipients or groups:
181jocelyne@rustyload.com A problem oc...

**P**  **To: 181jocelyne@rustyload.com**        11/15/24
Undeliverable: FW: Please call my num...   3   Inbox
...failed to these recipients or groups:

Please sign in to your
kristin.beaver@neric.org account.                Sign in

Mail        Calendar        Feed        Apps



**Lauren J. Gemmill**
**District Superintendent and CEO**
lauren.gemmill@neric.org
Phone: 518.862.4901
Fax: 518-862-4903

$\mathcal{G}$.

January 14, 2025

**VIA MESSENGER**

Kristen Beaver
449 Gutha Road
Delanson, New York 12053

Re:  Notice of Disciplinary Charges
      Under Civil Service Law §75

Dear Ms. Beaver:

This letter is to advise you that the following disciplinary charges have been filed against you, on behalf of the Albany-Schoharie-Schenectady-Saratoga Board of Cooperative Educational Services ("the BOCES"), in accordance with Section 75 of the New York Civil Service Law.

<u>CHARGE</u>

**CHARGE 1.  MISCONDUCT/INSUBORDINATION/INCOMPETENCE.**

*The BOCES charges Kristen Beaver with misconduct, insubordination and incompetence based upon the allegations set forth below.  The BOCES avers that each element of the charges set forth below individually constitutes just cause for Ms. Beaver's termination from employment with the BOCES.*

  a) *Ms. Beaver is employed as nurse by the Albany-Schoharie-Schenectady-Saratoga BOCES.  She has been absent from work without reasonable cause or excuse since October 1, 2024.*

  b) *On or about November 5, 2024, Ms. Beaver was directed to provide medical documentation to support her continued use of sick days and her continued absence from work.  To date, Ms. Beaver has failed to provide any medical documentation to support her absence from work since October 1, 2024.*

  c) *On or about November 20, 2024, Ms. Beaver was again directed to provide medical documentation to support her absence from work since October 1, 2024.  Ms. Beaver was also advised that her failure to provide such documentation would result in the BOCES determining that her absence since October 1, 2024 was unauthorized.  To date, Ms. Beaver has failed to provide any medical documentation to support her absence from work since October 1, 2024.*

  d) *On November 27, 2024, Ms. Beaver was verbally informed by the BOCES that her paid sick leave would expire as of December 2, 2024. Ms. Beaver has been absent without pay and without an approved leave of absence since December 2, 2024.*

e) *Ms. Beaver failed to report or "call-in" to work for the period of December 2, 2024 through December 6, 2024.*

f) *On January 3, 2025, Ms. Beaver verbally told Director of Human Resources, Nicole Yamin, that she would not return to her assigned position with the BOCES. Following this conversation, Ms. Beaver advised Ms. Yamin by email that she would not return to her assigned position unless other employees assigned to the classroom were transferred out. Thus, Ms. Beaver continues to refuse to return to her assigned position without reasonable cause or excuse.*

You may submit a written answer to the Charge. Such written answer must be received no later than the close of business on January 24, 2025, at the following address: 900 Watervliet-Shaker Road, Albany, New York 12205. The written answer, and any future correspondence regarding these charges, should be addressed to the attention of BOCES General Counsel, Bethany Centrone.

You may be represented by an attorney or other representative at your disciplinary hearing. At the hearing, you should be prepared to present any witnesses and other proof as you may have in your defense to the charges. The BOCES will use any and all records in its possession for the purpose of demonstrating your guilt on the above-referenced charges.

The BOCES Board has appointed Kristen E. Smith, Esq. to serve as the hearing officer in this matter. **The hearing shall take place at the BOCES Administrative Offices, 900 Watervliet-Shaker Road, Albany, New York on January 28 and January 29, 2025 at 9:00 a.m.**

If you are found guilty of the above charge, you may be reprimanded, fined not more than $100, suspended without pay for up to sixty (60) days, demoted in grade or title, or dismissed from service. At the hearing, the BOCES will request that the hearing officer find you guilty of the Charge, and recommend a penalty of *Dismissal from Service.*

Sincerely,

*Lauren J. Gemmill*

Lauren J. Gemmill
District Superintendent and CEO

cc: Nicole Yamin, Director of Human Resources

H.

 Gmail

## Fw: Reported incidents of bullying and harassment

Kristen Beaver <beaverkristen@hotmail.com>                                Sun, Feb 9, 2025 at 12:02 PM
To: "tdjs7071@gmail.com" <tdjs7071@gmail.com>
Cc: Kristen Beaver <beaverkristen@hotmail.com>

**From:** Kristin Beaver <kristin.beaver@neric.org>
**Sent:** Thursday, November 14, 2024 5:13 PM
**To:** beaverkristen@hotmail.com <beaverkristen@hotmail.com>
**Subject:** Fw: Reported incidents of bullying and harassment

**From:** Kristin Beaver
**Sent:** Wednesday, October 16, 2024 8:28 AM
**To:** Lauren Gemmill <lauren.gemmill@neric.org>
**Subject:** Reported incidents of bullying and harassment

Good Morning
A few months ago the classroom TA's began bullying and sabotaging me. It was within days of opting out of the union. At first I did not report this, because they are known for this toxic behavior and I figured I would stand up for myself and that it would pass. I was giving the silence treatment, yelled at if I didn't say good morning, called lazy and many other incidents. Soon these treatments intensified. As reported in May, Linda Robillard accused me of pushing a student while that student was having a seizure. At that moment I was terrified. These classroom members are known for this type of sabotage and treatment. I immediately reported this because I wanted it addressed. I spoke to Gabriel Barbatos and Nicole Yamin. They both responded by saying that It should make me happy because Linda did not report it. That infuriated me. She made a false allegation, and that is defamation of character. I have been a nurse for forty years and never have been accused of abuse. It states in BOCES policy manual that all allegations reported are to be thoroughly investigated including witnesses. This was not done. As I stated again the bullying behaviors continued. Because I had not been receiving breaks, In May I asked Kristin Blick if she could cover my student so I could take lunch breaks. She agreed. But soon after Katie approached me and stated I could not take a lunch break till the end of the day when my student left. My student did not get on the bus till 2:20 pm. Per our contract and labor laws I am entitled to breaks. This type of undermining me and making work environment intolerable continued. Comments in and out of the classroom were being made by staff members insinuating I was not doing my job properly. Recently,  in a meeting with Caralee and Nicole I also reported my experience  and also addressed Shareen Ali continuously being bullied by these staff members. She is also defamed, undermined, ridiculed and bullied. They accuse her of stealing food and harass her for any days she is out. They undermine her work performance but are not held at the same standards. Other staff members have witnessed this and have expressed frustration and concern of this treatment by these same staff members. I reported this and also in the past have tried to encourage Shareen to stand up for herself. This bullying and sabotage is nothing new in this classroom. I know other staff have complained. I would most importantly like to add that these staff members are frequently rough and mistreat students. I reported this in the meeting I had with Caralee and Nicole. Nicole specifically asked how these staff members treat students. I responded rough. But she asked no follow up questions in reference to my statement. This treatment of staff and students is witnessed by many. But many staff make it very difficult to report it, because of fear and retaliation. I

received a determination letter yesterday from Nicole Yamin stating that my allegations have been unfounded, but the determination only addressed union retaliation. This is shameful. My reports were to make BOCES aware of this hostile work environment and harassment. Union retaliation was just a small piece of this concern. BOCES policy states all complaints are to be investigated thoroughly and witnesses will be interviewed. This was not done. Staff members including nurses who have contact with that room should be interviewed for confirmation of my concerns. Coming forward and standing up for this has been  extremely stressful. I have been unable to return to work. BOCES not supporting,  and dismissing concerns brought to their attention is shameful. This is why people fear to come forward. I am going to pursue every avenue to protect my rights to speak out against this type of workplace harassment. I have read in the harassment policy I can appeal the determination. I would like to proceed with that. I would also like to request a third party to investigate my allegations. I absolutely believe if these concerns were thoroughly investigated it would be founded. I would also like to request another assignment within BOCES. I had recently requested this but was denied. I know this has been giving to another nurse, and frequently giving to other staff members who have issues within their classroom.

Thank you

Kristin Beaver

CONFIDENTIALITY NOTICE: This email message and any attachments are for the sole use of the intended recipient(s) and may contain proprietary, confidential, or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited and may be a violation of law. If you are not the intended recipient or a person responsible for delivering this message to an intended recipient, please contact the sender by reply email and destroy all copies of the original message.